Richard Langston MILLS

v.

R. M. OLIVER, Superintendent.

Civ. A. No. 73–409–R.

United States District Court,
E. D. Virginia,
Richmond Division.

Nov. 26, 1973.

Richard Langston Mills, pro se.

William A. Carter, III, Asst. Atty. Gen., of Va., Richmond, Va., for defendant.

## MEMORANDUM

MERHIGE, District Judge.

Plaintiff, a Virginia prisoner, seeks monetary and declaratory relief for alleged deprivation of constitutional rights during his incarceration. Jurisdiction is attained pursuant to 42 U.S.C. § 1983 and 28 U.S.C. §§ 1343, 2201, and 2202.[1] The case is presently before the Court on defendant's motion for summary judgment and plaintiff's response thereto. Upon the material before the Court the motion is ripe for disposition.

Initially, plaintiff alleges a denial of adequate medical treatment. His complaint specifies a four day period in July of 1973 during which he allegedly requested but was denied needed medication for "knots" in his underarm. Plaintiff avers that on July 16, 1973, and on July 18, 1973, he requested medication from one Sgt. Halsey and one Lt. May respectively. Mills' complaint indicates that the desired medication was delivered on July 20, 1973. In an affidavit supporting his motion for summary judgment, defendant admits that plaintiff requested medical attention from Sgt. Halsey on or about the 16th of July, 1973, and later from Lt. May. Defendant attests, however, and supports his claim with the submission of plaintiff's medical records while in prison, that plaintiff received medical attention on July 17th, indicating only that a previous prescription for relief from "headaches and nerves" was renewed. In rebuttal, plaintiff specifically denies receiving any medical attention on July 17th, although he again states that he received medication on July 20th, a fact not reflected in his records. Plaintiff's medical records also indicate, and plaintiff appears not to contest, that he received medical treatment on numerous occasions surrounding the dates here in

1. Although plaintiff alternatively seeks release from confinement, such relief would be improper other than in an action for habeas corpus.

question, including July 10, 24, 27, 30 and August 3 and 8. These dates are in addition to plaintiff's statement that he received medical treatment on July 20th. The only dispute relates to July 17th.

 A prisoner has a constitutional right to reasonable medical treatment. Blanks v. Cunningham, 409 F.2d 220 (4th Cir. 1969). This does not mean that every prisoner complaint requires immediate diagnosis and care, but that, under the totality of the circumstances, adequate medical treatment be administered when and where there is reason to believe it is needed. Thus an isolated incident of delay in medical attention may well depend upon the nature and potential severity of the malady and the context in which that malady arises for its constitutional significance. Defendant has attested that the prison dispensary was notified of plaintiff's complaints following their communication to Sgt. Halsey. He has further attested that during the general lockup which followed the prison disturbance on July 15 and 16 discussed below, medical personnel made daily rounds of the cell blocks, dispensing medications and holding sick call. Even assuming plaintiff was not, as he alleges, seen on July 17, there is no indication in this record that plaintiff's ailments were such as to require immediate attention.[2] Prison medical personnel, who both before and after the alleged incident, closely monitored plaintiff's physical condition, had been informed of his complaints and there is no indication from the pleadings or plaintiff's subsequent medical record that whatever course they pursued had serious adverse medical consequences. Nor, while discomfort may have ensued, is any severe or extended suffering such as would shock the conscience of this Court alleged. Delays in necessary medical treatment are always undesirable, and this Court, alert to the precarious position of a prisoner totally dependent upon prison officials for even the most rudi-

mentary medical care, will look closely at cases where abuse of that fundamental duty is alleged. Upon examination of the circumstances, the nature of the ailment, and the extent of medical treatment surrounding this incident, however, the Court finds that the facts before it fail to state a claim rising to the magnitude of constitutional deprivation. For these reasons, the allegations of inadequate medical treatment violating the Eighth and Fourteenth Amendments to the Constitution of the United States shall be dismissed and summary judgment granted for the defendant on this claim.

Plaintiff further attacks the constitutionality of his conviction before a prison Adjustment Committee on a charge of participating in a prison riot on July 15 and 16. According to the affidavit filed by defendant, a riot of substantial proportions occurred on the above mentioned dates. Following the disturbance, plaintiff, as with other prisoners, was held in his cell during a general lockup while prison authorities sought through investigation to separate the activists from those who did not participate. There are no indications on this record that the investigation was not conducted with due dispatch.

 It appears from the record that plaintiff remained locked in his cell without a hearing from July 16 until July 23, when he went before the Adjustment Committee. While under normal conditions such delay would seem excessive and place a heavy burden of justification upon prison authorities, common sense dictates that the exigencies of the situation following the July riot require a somewhat more relaxed standard. Although an inmate is always entitled to a hearing as soon as practicable, flexibility is inherent in such a rule. The Court notes that in the aftermath of the riot, not only was investigation necessary in order to determine which inmates were properly to be charged,

---

2. Although defendant has averred that plaintiff complained of heart trouble, plaintiff

himself vigorously denies making any such statement.

but a large number of cases requiring Adjustment Committee and Classification Committee action were suddenly thrust upon prison authorities. Meanwhile they were holding prisoners who were charged with actions posing a serious threat to prison security. In light of the above, the Court cannot say that the delay in Mills' case violated his constitutional rights.

Mills' primary attack on his conviction alleges that he was not informed of his right to retain counsel for the Adjustment Committee hearing, denied that right at the time of the hearing, and appointed an ineffective inmate advisor. Under Landman v. Royster, 333 F.Supp. 621 (E.D.Va.1971), a prisoner must receive notice of any charge upon which he is brought before an Adjustment Committee for punishment. If he desires and can retain an attorney, a reasonable opportunity, including a delay of trial of not less than four days, must be granted in order for such counsel to be obtained. If he cannot retain outside counsel, an accused inmate is entitled to the aid of an inmate advisor.

■ On July 22, a Division of Corrections Adjustment Committee Action Report was tendered to plaintiff for his signature. This document, explaining the charge against Mills and the rights set forth above, is the first step in the mechanism developed by prison authorities for compliance with the *Landman* guidelines. There is no dispute that Mills refused to sign the charge sheet when it was tendered. Mills, however, complains that the officer who delivered the sheet did not read to him the portions thereof dealing with right to counsel. There is no indication that plaintiff was denied the opportunity to examine the document. Nor does this appear to be a case where the inmate was incapable of understanding what was written on the sheet. The plaintiff here simply refused to sign or

have anything to do with the sheet. Under the circumstances the Court finds that authorities did not deny the plaintiff his opportunity to obtain outside counsel by failing to read the charge sheet aloud.[3]

■■ Plaintiff was brought before the Adjustment Committee on July 23, 1973, and at that time requested that he be allowed to retain outside counsel. This request was denied, the Committee stating that Mills had been given the opportunity to obtain counsel in the course of normal procedures and had refused to exercise that option. Although the defendant grants that other inmates who have changed their minds about outside counsel at the time of hearing have been granted a four day extension, the Court does not find that plaintiff's rights were violated by the present denial. Given the previous opportunity to summon counsel, the granting of an extension on the day of the hearing must be left in the sound discretion of the Committee itself. A prisoner cannot expect to refuse an offered opportunity to obtain counsel while reserving his option to delay his hearing on the day it is scheduled if for some reason he feels that such a delay would be advantageous.

Finally, plaintiff argues that he was given an inmate advisor who was unfamiliar with the type of case to be presented and incapable of rendering meaningful aid. The facts underlying this claim are as follows: Prison policy, as reflected in the charge sheet which was in this case rejected by plaintiff, is that if an inmate does not wish to employ an attorney, he may be "appointed an inmate advisor from the existing list of inmate volunteers. Advisors are appointed on a rotating basis." Such an advisor was appointed for plaintiff in this case despite his refusal to sign the charge sheet and, in the present context, Mills' refusal to sign is not material. After arriving at the hearing and dis-

---

3. Prison officials assert that the information concerning right to counsel was in fact read to Mills. This is the preferred procedure. However, since the fact is disputed by plain-tiff, the Court assumes, for purposes of this motion, that the rights written on the charge sheet were not read aloud.

cussing his case with his advisor, Mills decided that his appointed advisor was not capable of representing his interests and requested another advisor. Mills alleges, and defendant does not deny, that Mills' appointed advisor himself asked to be relieved from the case because he had never handled a similar case and did not feel qualified to do so. The Committee denied the request of plaintiff for a new advisor, and presumably that of the advisor to be relieved, and went forward with the hearing, finding Mills guilty as charged.

Under Landman v. Royster, 333 F.Supp. 621, 654 (E.D.Va.1971), an inmate brought before an Adjustment Committee for hearing has the right "to select a lay adviser to present his case." Inmate advisors in the state prison system are not accorded the presumption of legal competence invested in the practicing bar. They are simply individuals who are more or less capable of aiding those who may be intellectually unable to represent themselves in discipline hearings. There seems little question that some members of the inmate population, however much they may wish to do so, may, for a variety of reasons, be personally incapable of offering helpful legal advice in a specific situation. Appointment of such an individual would clearly undermine the purposes behind the *Landman* pronouncement. The Court cannot discern what, if any, procedures exist under the present prison system for initial screening of advisors or for their replacement if they are found to be unable to render any meaningful assistance at trial. Although accused inmates may not be infallible judges of legal talent, their choice from a list of those advisors available might provide the opportunity for at least some form of quality control. Mills, however, was not given such an opportunity. Neither he nor his assigned advisor were allowed to vary the selection made for Mills by prison officials. In short, the Court can find no assurance that the prison procedures, as they operated in this case, were calculated to pro-

duce for this prisoner, assumed incapable of presenting his own defense, an advisor any more capable of advancing his cause than he himself. Under such circumstances there is a substantial risk that elements of due process demanded by *Landman* have been denied. Summary judgment on this issue will be denied.

For the reasons stated above, defendant's motion for summary judgment shall be granted with respect to those claims relating to inadequate medical care, the delay between the time plaintiff was locked in his cell and his Adjustment Committee hearing, and the absence of opportunity to retain outside counsel at that hearing. The motion for summary judgment shall be denied with respect to issues concerning the appointment and retention of plaintiff's inmate advisor for that hearing.

An appropriate order shall issue.